UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANEENA W-M,<br><br>                        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                        Defendant. | Case No.: 3:18-cv-01661-WQH (RNB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 16, 17)** |

This Report and Recommendation is submitted to the Honorable William Q. Hayes, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On July 20, 2018, plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits. (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons discussed hereafter, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing

the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

On October 8, 2013, plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning December 10, 2012. (Certified Administrative Record ["AR"] 198-99; *see also AR 72*.) After her applications were denied initially and upon reconsideration (AR 89-92, 95-99), plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 101-02.) An administrative hearing was held on January 19, 2017. Plaintiff was represented by counsel and testimony was taken from her, as well as from a medical expert ("ME") telephonically and a vocational expert ("VE"). (AR 33-61.)

As reflected in his May 3, 2017 decision, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, at any time from her alleged onset date through the date of the decision. (AR 15-26.) The ALJ's decision became final on May 22, 2018, when the Appeals Council denied plaintiff's request for review. (AR 1-4.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520.[1]

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 10, 2012, the alleged onset date. (AR 17.)

---

[1] Unless otherwise indicated, all references herein to the Commissioner's regulations are to the regulations in effect at the time of the ALJ's decision.

At step two, the ALJ found that plaintiff had the following severe impairments: a bipolar disorder; a depressive order; an anxiety disorder; and asthma. (AR 17.)[2]

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR 18.)

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> "[S]he could understand, remember and carry out simple instructions for simple tasks and she could tolerate few workplace changes. Additionally, she could occasionally have superficial interaction with others, but no teamwork, and she would need to avoid pulmonary irritants, such as fumes, odors, dusts, gases, poor ventilation, etc." (AR 20.)

For purposes of his step four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC would not be able to perform the requirements of plaintiff's past relevant work. Accordingly, the ALJ found that plaintiff was unable to perform any past relevant. (AR 25.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, Industrial Cleaner, Mail Clerk, and Marker), the ALJ found that plaintiff had not been under a disability from December 10, 2012 through the date of his decision. (AR 26.)

---

[2] The Court notes that, in the discussion section of his step two finding, the ALJ also listed plaintiff's back disorder and irritable bowel syndrome as severe impairments. (*See* AR 17.)

# SUMMARY OF RELEVANT MEDICAL EVIDENCE OF RECORD[3]

On October 12, 2012, plaintiff was evaluated at the Camp Pendleton Mental Health Outpatient Clinic. (AR 279.) She presented "to get help with [her] depression and mood swings." (AR 280.) It was noted that she had a history of depression and, upon mental status examination, it further was noted that she had a labile mood, continued suicidal ideation, limited judgment, poor impulse control by history, poor concentration, and distractability. (*Id.*). It also was noted that plaintiff had skill deficits, early trauma abuse, prior suicide attempts, poor self-esteem, major depression, a broken foot, impulsivity/ aggression/manipulation/dependence precipitated by acute disappointments, embarrassments, humiliations or threat and availability of means. (AR 280-81.) Plaintiff was assessed with a moderate risk of suicide and a diagnosis of post-traumatic stress disorder ("PTSD"), possible bipolar disorder, and a borderline personality disorder. (AR 281.) While her Global Assessment of Functioning ("GAF") was assessed at 65 that day, it was noted that this was plaintiff's last session and that she was feeling better as she was going to have her baby and was trying to be with the father (who was in Pennsylvania). (AR 281-82.) It also was noted that plaintiff planned on seeking psychotherapy treatment. (AR 282.)

After returning to San Diego, plaintiff was seen at the Vista Veteran's Administration (VA") facility on January 2, 2014, complaining of abdominal pain. (AR 300.) It was noted that she was crying and tearful at the time, and that she was claiming to have been given the run around in getting help. (AR 405-06.) Plaintiff reported that she had been the victim of a physical assault and attempted rape in September 2012, and that she had left the Marine Corps in December 2012. (AR 406.) Plaintiff was noted to be depressed and suicidal, and she was referred for a mental evaluation. (AR 407.)

---

[3] Since plaintiff's sole claim of error relates only to her mental impairments, the Court has omitted from this summary evidence relating only to her physical impairments.

Plaintiff had a mental evaluation on January 30, 2014. (AR 300.) The examination was performed by Natalie Castriotta, PhD, under the supervision of Ann N. Nisenzon, staff psychologist. (AR 400-04.) The examination notes reflect that plaintiff reported a long history of sexual abuse during her childhood and sexual harassment in the military.[4] She also reported many symptoms of PTSD related to these traumas. She also reported avoiding people and places that reminded her of trauma, as well as feeling detached from others. (AR 401.) Plaintiff appeared underweight, severely isolated and "distrustful of psychologist" stating she was fearful of treatment. (*Id.*) Upon examination, plaintiff was dysthymic and labile, and was dysregulated throughout the session, fluctuating from tearfulness, anger, anxiety, laughter though she was regulated by the end of the session. (AR 402.) She was diagnosed with depressive disorder and possible PTSD, major depression, and substance abuse disorder in full remission. (*Id.*)

Plaintiff returned for a psychology consultation on February 25, 2014 and attended the military sexual trauma/interpersonal therapy (MST/IPT) orientation meeting on that date. (AR 299, 367.) The examination notes for that visit reflect that plaintiff met the criteria for PTSD, severe depression, and bipolar disorder. (AR 369-71.) On the Sheehan Disability Scale, plaintiff was assessed as being "very severely impaired" in Work/School, in Social Life/Leisure Activities, and in Family Life/Home Responsibilities. (AR 371-72.)

---

[4] Specifically, plaintiff reported that she had been molested repeatedly as a child by one of her brothers, a cousin, and various other family members; that her adopted mother had been verbally abusive and would deny any of plaintiff's claims of sexual abuse; that her mother put her on the streets at age 16 and she was forced into prostitution from age 16-18; that she joined the military to get away from her abusive family; that she had been sexually harassed and threatened on at least five separate occasions by higher ranking officers in the military; that, during the brief period of time from 2010 to 2012 when she was married, her ex-husband had been physically abusive and she had filed domestic violence charges against him. (AR 401.)

On March 3, 2014, a State agency physician found on initial evaluation that there was insufficient medical evidence in the record to determine whether plaintiff had a medically determinable impairment.[5] The report noted that there was no opinion evidence from any source and recommended a consultative examination in order to establish the current severity of plaintiff's impairment(s). (*See* AR 68-70.)[6]

When plaintiff again was seen by a treating source on April 9, 2014, she was diagnosed with adult sexual abuse, military sexual trauma, and a depressive disorder. (AR 299.)

On June 19, 2014, it was noted in plaintiff's VA medical records that, after plaintiff attended the MST/IPT orientation meeting on February 25, 2014, she had been scheduled for an intake appointment in March 2014; however, she had been a no-show to her scheduled appointment. The nurse provider called plaintiff on this date to discuss treatment. In the phone call, plaintiff reported that she was doing, "ok, better but still I need some treatment." Plaintiff maintained that she had not followed up due to finances; however, she reported that she was interested in scheduling the intake evaluation. An order was then submitted for plaintiff to be rescheduled for the first available intake appointment with any MST/IPT provider. (AR 517.) As of that date, plaintiff's medical records reflected a diagnosis of "major depressive affective disorder, recurrent episode and moderate degree." (AR 298.)

The MST/IPT intake evaluation was rescheduled for July 16, 2014; however, plaintiff again was a no-show/no-call. (AR 516.)

---

[5] It appears that the medical evidence reviewed by this physician did not include the February 25, 2014 examination notes. (*See* AR 66-67.)

[6] It appears from the Administrative Record that a consultative physical examination for plaintiff was scheduled to be held on September 6, 2014, but plaintiff failed to attend. (AR 296.) It does not appear from the record that a consultative mental examination ever was scheduled for plaintiff.

On July 29, 2014, another State agency physician in his reconsideration evaluation diagnosed plaintiff as having severe medically determinable mental impairments, namely an affective disorder and an anxiety disorder characterized by "recurrent and intrusive recollections of a traumatic experience which [were] a source of marked distress." (AR 80.) The physician assessed that plaintiff was mildly impaired in activities of daily living, and moderately impaired in maintaining social functioning and in maintaining concentration, persistence or pace. (*Id.*) He also noted that plaintiff appeared to be suffering from PTSD and a mood disorder, and that there might be personality disorder traits present. (AR 81.) The same evaluation report noted that there was insufficient evidence to evaluate the claim (*id.*), and that still there was no opinion evidence from any source (AR 84).

It appears from plaintiff's VA medical records that, by April 22, 2015, plaintiff was found to have a 90% service-connected disability, including a major depressive disorder disability rating of 30%.[7] (AR 511.) At a medical appointment on that date, plaintiff requested to start treatment services. She reported complaints of symptoms related to depression and hopelessness since transitioning out of the military. She stated that she had started on medications in the past, but they caused side effects. However, plaintiff also reported that the previous year she had started working out and this helped with symptoms, but she was not currently able to work out due to issues at the gym. She reported her recent stressors as relationship issues, losing her housing and financial stressors. (*Id.*) The examination notes reflect that plaintiff presented with a depressed mood, anhedonia,

---

[7] A disability rating of 30% for a mental disorder signifies "[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events)." 38 C.F.R. § 4.130.

helplessness, and hopelessness. (*Id.*) It was noted during the mental status examination that plaintiff had a pleasant demeanor, was alert and oriented in all spheres, and was cooperative. Her speech was of a normal rate, rhythm and tone, and her thought process was linear and logical with no evidence of any flight of ideas, tangentiality or circumstantiality. However, her mood was described as sad and her affect was tearful and tense. (AR 512-13.) Plaintiff was diagnosed as suffering from a depressive disorder and she was given a referral to psychotherapy treatment. (AR 514.)

On October 27, 2015, when plaintiff was seen for follow-up at the VA Medical Center, she reported, "I'm just depressed, but I can deal with it." (AR 495.) The examination notes reflect that plaintiff currently was attending school full-time at Mira Costa College for kinesiology; and that she had been referred by her primary care physician to assist with mental health services and to assess for well-being. The notes also reflect that plaintiff had been seen in April 2015 and given a prescription for Lorazepam as needed; however, plaintiff had taken this medication only twice and then stopped due to its ineffectiveness and making her drowsy. (*Id.*) Plaintiff reported that she had been kicked out of various apartments and gyms because people did not like her; and that she had been easily distracted as of late. (AR 496.) Plaintiff also reported current activities as working on poetry, writing songs and working out two times per day for one hour each time; that she was getting good grades in her homework; and that she was being paid to do surveys for a company. (*Id.*) It was noted that plaintiff was neatly groomed, voluble and that, while guarded at times, she was animated and pleasant upon approach. (*Id.*)

Plaintiff's medical records further reflect that, as of July 24, 2016, plaintiff was waiting to be treated at the VA for mental health issues. She reported that she was "unable to work, or function much," but she had to take care of her daughter and wanted to start the therapy process. (AR 488.)

At the administrative hearing held on January 18, 2017, Dr. C. Richard Johnson appeared telephonically as the ME. Dr. Johnson initially testified:

> "The record is really sparse for psychiatric conditions. At 1F we have a diagnosis of post-traumatic stress disorder, alcohol abuse, borderline personality disorder, and a GAF score of 65. At 4F we have a diagnosis of depressive disorder, not otherwise specified but rule out post-traumatic stress disorder, rule out major depressive disorder, and rule out one other condition in full remission." (AR 44.)

Dr. Johnson then testified that "on the basis of this long record, she does not meet a listing level impairment." (AR 45.) In response to the ALJ's inquiry regarding the severity of plaintiff's limitations, Dr. Johnson testified that he felt plaintiff would have no or only mild limitations in the ability to learn, recall, and use information to perform work; that plaintiff would have only mild limitations in the ability to interact with others; that plaintiff would have only mild limitation in the ability to concentrate, persist or pace; and that plaintiff would have mild to moderate limitations in the ability to adapt to manage oneself such as regulating emotions, controlling behavior and maintaining wellbeing in a work setting. (AR 45-46.) Dr. Johnson further opined that plaintiff would be limited to understanding, remembering, and carrying out simple instructions or simple tasks, with mild limitation in the ability to interact with others in the workplace, and moderate limitation with respect to workplace changes. (AR 46-47.)

The ALJ then asked plaintiff's counsel, Mr. Shore, if he had any questions. (AR 47.) Plaintiff's counsel proceeded to direct Dr. Johnson's attention to a page from plaintiff's medical records relating to plaintiff's January 30, 2014 psychotherapy appointment (i.e., AR 400). Plaintiff's counsel noted that plaintiff had discussed multiple PTSD symptoms and related sexual traumas, which included both childhood abuse and sexual harassment in the military; and that plaintiff had talked about nightmares, intrusive memories, and reexperiencing symptoms. When plaintiff's counsel asked if Dr. Johnson had considered that information, Dr. Johnson responded, "I did not see that information."

(AR 47-48.) However, after reviewing the information on AR 400, Dr. Johnson acknowledged:

> "It provides a different, certainly a different picture than I'd seen in earlier reports I had commented on and I would think that her problems would rise to more moderate limitations." (AR 48.)

Plaintiff's counsel then pointed out that, on the next page, it mentioned that plaintiff's mother had been verbally abusive and would deny her claims of sexual abuse that she apparently had reported to her mother; and that plaintiff's mother had put her on the streets at age 16 and forced into prostitution from age 16 to 18. When plaintiff's counsel then asked Dr. Johnson whether those would be the type of events that would result in ongoing symptoms associated with PTSD, Dr. Johnson responded in the affirmative. (AR 50.)

Plaintiff's counsel then directed Dr. Johnson's attentions to two pages from the medical records relating to plaintiff's February 25, 2014 psychology consultation (*i.e.*, AR 370 and 372). Plaintiff's counsel noted that, on page [AR 370], "it says reported thoughts of acting violently because she had had thoughts of hurting herself. And on page [AR 372], it says that scores are significant on the post-traumatic growth inventory, trauma-related guilt inventory, and trauma-related disgust questionnaire." When asked to comment on that, Dr. Johnson responded:

> "Yes, I did not see that, and I think that would certainly change my evaluation to probably marked difficulties with concentration, persistence, and pace, and social functioning. (AR 51.)

The ALJ confirmed with Dr. Johnson that his opinion now was marked limitation in the ability to interact with others and marked limitation in the ability to concentrate, persist, or maintain pace. (*See* AR 52.) When the ALJ then asked which was the most prevalent diagnosis, Dr. Johnson responded that the post-traumatic stress would be primary and that

the condition would support an onset date in the vicinity of December 2012. (*Id.*) The ALJ inquired no further.[8]

## PLAINTIFF'S SOLE CLAIM OF ERROR

The sole claim of error raised in plaintiff's summary judgment motion is that the ALJ failed to properly assess the opinion of the Agency's medical advisor, Dr. Johnson. In support of this claim, plaintiff contends that the ALJ failed in his duty to develop the record and failed to articulate legitimate rationale for rejecting Dr. Johnson's opinion. (*See* ECF No. 16-1 at 13-18.)[9]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole

---

[8] The Court notes that, when the ALJ later included Dr. Johnson's marked limitations in one hypothetical to the VE, including a limitation of being off task upwards of 15 minutes each hour, the VE responded that no work would be available. (See AR 60.)

[9] In her cross-motion, the Commissioner framed the issue in dispute differently, arguing that the ALJ properly found that plaintiff was not disabled under the Listings. (*See* ECF No. 17-1 at 4-10.) However, the Court's findings hereafter that the ALJ failed to provide adequate reasons for rejecting Dr. Johnson's opinion and failed in his duty to develop the record and the Court's conclusion that remand is warranted for further development of the record render it unnecessary to address the Listings issue raised by the Commissioner.

and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

### A. The ALJ failed to properly assess the opinion of Dr. Johnson, the ME.

In Social Security cases, courts give varying degrees of deference to medical opinions depending on the type of physician who provided them, namely "treating physicians," "examining physicians," and "nonexamining physicians." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). A treating physician's opinion is generally given the most weight. *See* 20 C.F.R. § 404.1527(c)(2); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). An examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. *Garrison*, 759 F.3d at 1012. The weight that may be afforded to non-examining physicians depends "on the degree to which they provide supporting explanations for their opinions." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008).

An ALJ may reject a nonexamining physician's opinion "by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998); *see also Davis v. Astrue*, 444 F. App'x 151, 152-53 (9th Cir. 2011) (reversing where ALJ failed to provide legally adequate reasons for rejecting opinion of the ME).

Here, after acknowledging that Dr. Johnson, the ME, had assessed *inter alia* a marked limitation in interacting with others and marked difficulties in concentrating, persisting, or maintaining pace, the ALJ stated:

> "[L]ittle weight is given to Dr. Johnson's opinion, based on the fact that the VA report was a one-time examination; the medical expert's inconsistent review of the record; and the claimant's subjective complaints, regarding the

longitudinal record and the claimant's failure to follow-through with treatment does not support the severity of these limitations." (AR 23.)

As a preliminary matter, the Court concurs with plaintiff that it was disingenuous for the ALJ to act at the hearing as if he accepted Dr. Johnson's changed opinion without inquiring further of Dr. Johnson about any perceived discrepancies. In any event, the Court finds that none of the ALJ's reasons for according little weight to Dr. Johnson's opinion regarding the severity of plaintiff's limitations was legally adequate.

First, contrary to the ALJ's characterization, the pages to which plaintiff's counsel directed Dr. Johnson's attention and which caused Dr. Johnson to change his initial assessment were from two separate examinations--plaintiff's January 30, 2014 psychotherapy appointment and plaintiff's February 25, 2014 psychology consultation. Moreover, plaintiff's long history of sexual abuse and harassment, betrayal, and traumatic experiences was well documented throughout her medical records. (*See. e.g.*, AR 279-82, 400-04, 405-07.)

Second, it is unclear what the ALJ meant when he cited Dr. Johnson's "inconsistent review of the record." Dr. Johnson changed his opinion regarding the severity of plaintiff's limitations after plaintiff's counsel called Dr. Johnson's attention to particular information in plaintiff's medical records that Dr. Johnson conceded he had overlooked when arriving at his initial opinion. Thus, this is not an instance of a physician having inconsistent opinions. Further, the mere fact that Dr. Johnson overlooked certain parts of plaintiff's medical records in his initial review of the file does not undermine Dr. Johnson's ultimate opinion insofar as it was based on information in plaintiff's medical records.

Third, it is unclear what the ALJ meant by his reference to plaintiff's "subjective complaints, regarding the longitudinal record." The Court is mindful of Ninth Circuit authority for the proposition that an ALJ may reject a medical opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ did make

13

an adverse credibility determination with respect to plaintiff's allegations regarding her symptoms and functional limitations and did purport to list reasons in support of that determination. (*See* AR 23-24.) However, Dr. Johnson did not base his changed opinion primarily on plaintiff's allegations of her symptoms and functional limitations, but rather he based it primarily on plaintiff's long history of sexual abuse and harassment, betrayal, and traumatic experiences and on the clinical scores on various tests assessed at plaintiff's February 25, 2014 psychology consultation. If the ALJ believed that Dr. Johnson was basing his changed opinion primarily on self-reports by plaintiff that were not credible, he should have inquired further of Dr. Johnson to confirm that.

Fourth, while the ALJ cited plaintiff's "failure to follow-through with treatment," he never inquired of plaintiff regarding whether she had any reason(s) for not following through with respect to the various missed appointments. Moreover, this purported reason goes more to the issue of plaintiff's credibility than to the issue of whether the ALJ properly considered Dr. Johnson's opinion, and the Ninth Circuit has cautioned that a claimant's lack of compliance with her mental health treatment should not be a basis for an ALJ's adverse finding against her when her lack of compliance is attributable to her mental illness. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

**B.    The ALJ failed in his duty to develop the record.**

In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered, and this special duty exists even when the claimant is represented by counsel. *See, e.g., Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014); *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir.2001); *Smolen*, 80 F.3d at 1288*; Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir.1983). "The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *McLeod v.*

*Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). Moreover, "[a] specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy."). *McLeod*, 640 F.3d at 885. The duty to develop the record is heightened when the claimant is unrepresented or "**is mentally ill and thus unable to protect her own interests**." *Tonapetyan*, 242 F.3d at 1150 (emphasis added).

Here, as noted above, at step two of the sequential evaluation process, the ALJ proceeded to find, based on the medical evidence of record, that plaintiff *inter alia* had severe mental impairments (*i.e.,* a bipolar disorder, a depressive disorder, and an anxiety disorder). (*See* AR 17.) Under the Commissioner's regulations, an impairment is severe only if it **significantly** limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 405.1520(c) (emphasis added). Basic work activities are "abilities and aptitudes necessary to do most jobs," including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *See* Social Security Ruling ("SSR")[10] 85-28.

The medical evidence before the ALJ did not include an opinion from any treating or examining physician regarding plaintiff's work-related limitations due to her severe mental impairments or an assessment of plaintiff's mental RFC. While the ordering of a consultative examination is discretionary under the Commissioner's regulations (*see* 20 C.F.R. § 404.1517), here the State agency physician specifically noted in his March 3, 2014 initial evaluation that there was no opinion evidence from any source and he specifically recommended a consultative examination in order to establish the current severity of

---

[10] Social Security Rulings are binding on ALJs. *See Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

plaintiff's impairment(s). (*See* AR 68-70.) Subsequently, another State agency physician specifically noted in his July 29, 2014 reconsideration evaluation that there was insufficient evidence to evaluate the claim, and that still there was no opinion evidence from any source. (*See* AR81, 84.) While plaintiff subsequently was scheduled for a consultative physical examination (*see* AR 296), it does not appear from the Administrative Record that she ever was scheduled for a consultative mental examination. The Court finds that the ALJ's failure to either follow up with plaintiff's mental health treating doctors or order a consultative mental examination in this instance (a) constituted a violation of the ALJ's special duty to fully and fairly develop the record, and (b) resulted in a decision that was not supported by substantial evidence. *See, e.g.*, *Molina v. Berryhill*, 2018 WL 6421287, at *4 (E.D. Cal. Dec. 6, 2018) (holding that ALJ's RFC determination was not supported by substantial evidence when ALJ made her own evaluation of the functional limitations caused by the claimant's diagnosed impairments without further developing the record through a consultative examination); *de Lopez v. Astrue*, 643 F. Supp. 2d 1178, 1184 (C.D. Cal. 2009) (holding that ALJ failed in his duty to fully and fairly develop the record where the administrative record did not contain any opinion by a treating or examining physician regarding the claimant's RFC); *Mendoza v. Barnhart*, 436 F. Supp. 2d 1110, 1116 (C.D. Cal. 2006) (same); *see also Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("[T]he ALJ's RFC determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician.").

## CONCLUSION AND RECOMMENDATION

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is warranted where additional administrative proceedings could

remedy defects in the decision.  *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635.  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

Here, the Court has found that the record has not been fully developed with respect to the functional limitations resulting from plaintiff's severe medically determinable mental impairments.

This Court therefore **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation.  *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation."  A party may respond to the other party's objections within 14 days after being served with a copy of the objections.  *See id.*

IT IS SO ORDERED.

Dated:  September 4, 2019

_____
ROBERT N. BLOCK
United States Magistrate Judge